### GARROW, MacCLAIN & GARROW, Inc., v. TEXAS & N. O. RY. CO. et al.

### No. 9547.

Court of Civil Appeals of Texas. Galveston.

May 15, 1931.

Rehearing Withdrawn June 4, 1931.

Fulbright, Crooker & Freeman, of Houston, for appellant.

Baker, Botts, Andrews & Wharton and Arterbury & Coolidge, all of Houston, for appellees.

GRAVES, J.

The suit was by appellant, a private corporation engaged in the business of a cotton factor at Houston, against the several appellee railway companies composing "the Southern Pacific Lines of Texas," to recover an aggregate excess or overcharge of $4,270.50, alleged to have been through a mistake of facts paid them by it in a series of fifteen checks between July 5, 1921, and July 1, 1922, as for freight on 3,876 bales of cotton hauled to Houston over their railways in different shipments during that period, with an alternative count for judgment for the stated sum as for money had and received.

After a demurrer and a denial, both general, the appellees specially pleaded that they had, at the different times the several checks were presented to them by him, refunded in cash to the appellant's agent, Mr. Gammell, whatever sum was then due it on each one of them resulting from any excess in the amount thereof over the proper freight charge, that such agent had the authority to so receive the money for appellant, "and that, if the said Gammell was not authorized to accept said amount, then that in accepting the same he was acting within the apparent scope of his authority."

The appellant, without challenging the sufficiency of this answering plea by specially excepting thereto, joined issue on the facts therein alleged by denying that its agent, Gammell, was acting within the apparent scope of his authority in receiving the refunds specified.

The trial court, presumably under the view that Gammell was shown to have had no express authority to do so, submitted the cause to a jury upon this single special issue:

"Was Gammell acting within the apparent scope of his authority when he received the refunds on the fifteen checks offered in evidence, aggregating $4,270.50? Answer yes or no as you may find.

"In this connection you are charged that an employee is acting within the apparent scope of his authority when from the acts and conduct of such man's employer a reasonably prudent person having knowledge of such facts and conduct of such employer, acting in good faith, would conclude the employee had the authority to act as he did and would rely and act upon such assumption."

On the return of an affirmative answer, judgment went for the appellees.

All of appellant's freight bills, including those evidenced by these transactions, were paid by checks, or vouchers, that indicated by recitations on the face thereof that they were for freight to Houston on a specified number of bales of cotton, the further facts about the fifteen here involved being reflected in this written agreement of the parties, which was in evidence below:

"It is agreed in the above entitled and numbered cause that the plaintiff, Garrow, McClain & Garrow, on the dates and in the amounts shown below, issued their checks, or vouchers, to J. A. Sanders, Agent of the Southern Pacific Lines;

"That Mr. Gammell, an employee of Garrow, McClain & Garrow, took the checks to T. D. Elam, Cashier of the defendant railroad companies, for the purpose of paying the freight on the stipulated amount of cotton as stated in said vouchers; that when Mr. Elam checked his freight receipts against the particular vouchers presented, they showed that the voucher was in excess of the true amount of freight due in the amounts shown below under the heading of amount of refund, whereupon Mr. Elam, as Agent for the defendant railroad companies, accepted said checks and paid to Mr. Gammell, said employee of plaintiff, the difference between the true amount owed and the amount specified in the check. That this amount was paid to Mr. Gammell in cash.

| Amount of Check | Amount of Refund |
|---|---|
| $ 609.72 | $ 327.61 |
| 751.25 | 434.32 |
| 319.29 | 319.29 |
| 354.06 | 289.72 |
| 1,006.26 | 238.81 |
| 1,284.19 | 494.24 |
| 734.90 | 440.06 |
| 506.37 | 292.29 |
| 1,291.58 | 345.14 |
| 2,026.13 | 402.97 |
| 341.55 | 59.88 |
| 698.58 | 142.67 |
| 575.20 | 241.54 |
| 519.41 | 64.48 |
| 622.19 | 177.56 |
| Total amount of Refund | $4,270.53 |

"The issue between the parties being whether or not Mr. Gammell, the employee of Garrow, McClain & Garrow, Inc., had authority to accept the money mentioned as paid him above for his employer."

The undisputed testimony additionally showed that appellant's employee thus named appropriated the whole of the $4,270.50 so refunded to him to his individual use, without its knowledge or consent, and that it never received any part thereof.

Appellant asks a reversal and rendition in its favor on two grounds, which are thus stated in its brief:

"First, appellees' pleadings did not allege the necessary facts to constitute estoppel and were wholly insufficient as a plea of estoppel, and therefore the court erred in submitting to the jury the question of whether or not the

appellant should be estopped to deny the authority of its employee to receive payment of the money sued for from appellees.

"Second, the evidence was wholly insufficient to warrant the trial court in submitting to the jury such issue of estoppel."

Both of these contentions are inept, we think, in referring to the issue of fact submitted by the court to the jury as "the issue of estoppel"; in our view, while it may be said to have in a sense rested on the same fundamental principle as a technical plea of estoppel, it rather should be termed what it plainly purports to be and is, the issue of "the apparent scope of his authority" to do for his principal what this agent was admittedly shown to have done, that is, received these refunds in cash from the appellees; the question submitted to the jury follows almost exactly the wording of the appellees' pleading tendering the affirmative defense that Gammell was acting within the apparent scope of his authority for appellant when he received the refunds from them in the way he did; in reply, instead of challenging its sufficiency as such by special exception, or otherwise averring that it did not apprehend just what was meant thereby, or what proof it would be called upon to present in opposition, it chose rather to in effect assert that it understood fully and to join issue on the facts charged by saying: "Plaintiff specifically denies allegations in paragraphs 3, 4, and 5 of the defendants' said answer wherein the defendants allege that one W. G. Gammell was plaintiff's agent with authority either apparent or actual to receive payment of the money herein sued for." It could not therefore be heard to yet say the question propounded did not submit the issue of fact on which the minds of both parties had thus met in their pleadings.

The first claim for error must accordingly be overruled.

■ As concerns the second, although it only presents the point that the evidence did not even raise an issue of fact over whether or not Gammell had the apparent authority to accept the refunds for his employer—not that the jury's finding that he did have was so against the weight of the evidence as to be clearly wrong—we have not felt so sure; after carefully reviewing the statement of facts, however, the conclusion has been reached that the issue was raised as to all the checks, or items, except the third one listed above, that is, the one for $319.29, on which the refund paid in cash was the full amount. Had the verdict been attacked as being so against the preponderance of the evidence as to require its being set aside, this court would doubtless have so held, but, when the exercise of its authority is thus limited to determining merely whether there was enough to authorize a submission of the inquiry to the jury, it must hold there was, with the limitation stated.

It is true appellant's officers and others directly, unequivocally, and undisputedly testified in effect that they never conferred on Gammell the authority to accept and receipt for these refunds, but, though uncontroverted, that does not meet the ultimate issue of fact inhering in this question to the jury that might become the basis of liability, especially when affirmatively answered in the light of the court's accompanying instruction as to the law applicable; there was no exception or objection on appellant's part to that statement of the rule, and, in the circumstances attending, this court perceives none, so that, quite apart from whether his principals ever expressly empowered him to do that particular thing, the question becomes one of whether they permitted him to so act in the conduct of their freight business with the appellees as led them, knowing that attitude, in the exercise of reasonable prudence and good faith, to so pay him these refunds in the belief at the time that he had the authority to accept them.

As before indicated, we think the testimony tendered properly carried that issue to the jury; that Mr. Elam, appellees' cashier who thus paid the refunds, acted in good faith in making them, is wholly without dispute; and that, considering not only the long-established practice of appellant's named agent, but that also of other shippers rather generally in disposing of their freight bills in the same way at his office, his prudence in so doing as in reliance on its being agreeable on both sides does not seem questionable, otherwise than concerning the one check we have excepted.

Mr. Gammell had been in appellant's employ during the whole period of these transactions, as well as some time both before and after. It was his duty to see that all cotton arriving in Houston consigned to appellant was delivered to it. He was to assemble the bills of lading, and to receive and classify the arrival notices sent it by the railroad companies. It was his duty to check such arrival notices against the bills of lading and to accept for the appellant the delivery of the cotton. It was his duty to compute from these arrival notices the amount of freight that was due the railroad companies on them, and, having so computed and determined the amount of freight that was due on a given number of bales of cotton, to make out a check to the order of the railroad company for the amount of that freight. When this check was properly signed by the designated officers of the company, it was his duty to see that the freight was paid, the evidence further showing that, while the check might have been in some instances delivered to the railroad company by the office boy, or some other employee, it actually was often delivered by

Gammell in person. These detailed services indicate many and varied duties on his part, each one involving considerable responsibility. It appears in this connection to have been quite generally the custom in Houston for various concerns to pay the freight covering several shipments with one check, and that, in consonance with that practice, a check would often be presented to the railroad company, not only from appellant, but from many other business houses, the amount of which would be in excess of the amount of freight actually due, and that in such cases the cashier of the railroad company would take the check and pay back to the shipper the difference between the face of it and the amount of the freight actually due, taking the latter concern's receipt for such refund. The case at bar seems to have grown out of this custom. Gammell would present to the railroad company a check in excess of the amount that was actually due on the cotton received. In each instance, it having been his duty to compute for his company the amount of freight that was due and to fill out the check for such an amount and present it to the officers for execution, he would explain to the appellees' cashier that it would be considerable trouble to run such check back through his company's books, and that it could be more easily handled by taking a refund of the difference between the amount of the check and the amount of the freight actually due. This was no unusual procedure, and the cashier of the railroad company kept a receipt book for such purpose, wherein he kept receipts from various concerns for money he refunded under such circumstances. In each instance, when he would make a refund to appellant's agent, he would take a receipt for the amount, signed, "Garrow, MacClain & Garrow, by Gammell."

It further appears that occasionally it was detected in the appellees' office that there had been some slight mistake in freight accounts, and on such occasions the railroad company would make a refund to Garrow, MacClain & Garrow, and, when the money was paid at the latter's office, they took a receipt for it just as they did when they made the refunds here involved to the agent, Gammell, at the railroad company's office, that receipt being signed, "Garrow, MacClain & Garrow, by Gammell," just as were the receipts given to the railroad company at the latter's office by the agent, Gammell.

The résumé just given, while substantially taken from the appellees' brief, correctly reflects what appears in the statement of facts.

Admittedly, although the practice outlined had been going on for the time and under the conditions indicated, appellant never made any check of Gammell's work, nor of the status of its freight accounts with any of the appellee railroads, until after he had been let out of their employ because they did not need him any longer, and did not discover that he had defrauded the corporation in these transactions for about fifteen or eighteen months after they had closed their books for the cotton season during which his defalcations took place, when for the first time they belatedly checked over their entire freight record for that season.

From this evidence as a whole, the inference that Mr. Gammell was acting within the apparent scope of his authority for his principal as to all the checks, except that for $319.29, refunded in toto, does not seem unreasonable; as concerns that one, however, it showed on its face by the attached notices of arrival that the seventy-eight bales of cotton it covered the freight into Houston on had all been transported over a different railway system entirely, the I. & G. N. Railroad Company, and that it had in consequence been made payable to the appellees' agent in error, wherefore, being at a glance wholly foreign to any business at all between appellant and appellees, there was no justification for the latters' cashier, Mr. Elam, to pay it in full, notwithstanding when that fact was at the time discovered, on the statement of Gammell to him that he did not want to run it back through his employer's books, but desired the money instead, so he could go to the I. & G. N. Railway Company and pay their bills in cash.

Further discussion is deemed unnecessary; these conclusions require a reversal of the trial court's judgment as to this last-mentioned check, and the rendition here of judgment in appellant's favor for the amount of it, together with 6 per cent. per annum interest thereon from and after the date of the filing of this suit, but an affirmance in all other respects; it has been so ordered.

Affirmed in part; reversed and remanded in part.